UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
PUTNAM AT TINTON FALLS, LLC,

                         Plaintiff,

      -against-

RICHARD ANNUNZIATA,

                         Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/2021

No. 20-MC-281 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Before the Court is non-party Andrew I. Panken ("Panken")'s motion to quash a post-judgment subpoena issued by Plaintiff Putnam At Tinton Falls, LLC ("Plaintiff"), a judgment creditor. The subpoena seeks information and documents related to a trust established by Panken's client Ettore Annunziata, the deceased father of Defendant Richard Annunziata. Panken objects to producing the requested documents on the grounds that they are subject to attorney-client privilege. Plaintiff opposes the motion to quash and brings a cross-motion to compel compliance with the subpoena.

For the following reasons, Panken's motion to quash is DENIED without prejudice and Plaintiff's cross-motion to compel is GRANTED.

**BACKGROUND**

On August 10, 2020, Plaintiff moved this Court to register a final judgment against Defendant Richard Annunziata ("Defendant") entered by the United States Bankruptcy Court for the District of New Jersey on March 27, 2020. (ECF No. 3.) Plaintiff served a post-judgment subpoena (the "Subpoena") dated August 10, 2020 to non-party Panken, an attorney, seeking to depose Panken and requesting documents (the "Trust Documents") related to the "Ettore

1

Annunziata Irrevocable Trust" ("the Trust").[1] (Exhibit A to the Affidavit of Andrew Panken ("Subpoena"), ECF No. 9-1.) Panken was retained by Ettore Annunziata, the deceased father of Defendant, to prepare a self-settled revocable trust. (Panken's Aff. at 2). The Trust was last amended on July 31, 2019. (*Id.*)

On November 10, 2020, Panken moved to quash the Subpoena. (ECF No. 8.) In support of his motion, Panken submitted an affidavit and a memorandum of law. (ECF Nos. 9–10.) On December 18, 2020, Plaintiff served an opposition to the motion to quash and cross-motion to compel compliance with the Subpoena. (ECF No. 12.) In support of its cross-motion, Plaintiff submitted a memorandum of law and various exhibits. (ECF Nos. 12–13.) Panken submitted a memorandum of law in response. (ECF No. 11).

## LEGAL STANDARD

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). Pursuant to Federal Rule of Civil Procedure 69, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person . . . as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Rule 45 applies in post-judgment discovery and authorizes a party's attorney to issue both document and deposition subpoenas. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013). Rule 45 requires a court to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). The movant bears the burden of persuasion on a motion to quash. *John Wiley &*

---

[1] Panken represents that the trust is a "self-settled revocable trust" rather than an irrevocable trust as labeled by Plaintiff's subpoena. (*Compare* Affidavit of Andrew I. Panken ("Panken's Aff."), ECF No. 9, ¶ 3, *with* ECF No. 9-1 at 3.) As the Parties do not dispute the label of the trust is at issue, the Court proceeds with its analysis of the instant motion to quash by referring to the trust as "the Trust" for the sake of consistency.

2

*Sons, Inc. v. Doe Nos. 1–30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012). Motions to quash under Rule 45 are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

## DISCUSSION

Panken seeks to quash Plaintiff's post-judgment subpoena on the grounds that the subpoena seeks documents and information that are protected from disclosure by the attorney-client privilege between Panken and his deceased client Ettore Annunziata. (Memorandum of Law of Andrew I. Panken in Support of His Application to Quash the Within Subpoena Pursuant to FRCP 45(d)(3) ("Panken's Mem."), ECF No. 10.) Panken maintains that such privilege has not been waived because neither Panken nor his client disclosed the documents to anyone outside of Panken's office. (*Id.*) Plaintiff opposes the motion to quash and seeks to compel Panken's compliance with the subpoena by asserting that (i) the Trust Documents are not protected under attorney-client privilege because the attorney-client relationship does not exist with respect to the administrators and beneficiaries of the Trust; (ii) even if the documents were protected under privilege, the privilege was waived once the trust document was shared with individuals other than Ettore Annunziata after his death; and (iii) the Trust Documents are not subject to privilege because the Trust was created to engage in the fraudulent transfers of assets. (*See* Plaintiff's Memorandum of Law in Opposition to Motion to Quash and in Support of Cross-Motion to Compel ("Pl's Opp."), ECF No. 12.)

The Subpoena seeks to depose Panken and to obtain: (1) the original Trust document and all amendments and revisions to the Trust; (2) copies of all deeds, warranty deeds, or other documents referencing any real property transferred to the Trust from April 15, 2015 to present; (3) copies of all documents, information, or records reflecting any personal property, bank

accounts, or other assets held by the Trust; and (4) copies of any documents or records reflecting the transfer of assets or property owned or controlled by the Trust from January 1, 2020 to present. (*See* Subpoena.)

Below, the Court considers whether the information and documents sought by the Subpoena are protected under attorney-client privilege.

**I.     Attorney-Client Privilege**

The attorney-client privilege is one of the "oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* at 403 (internal quotation marks omitted). When seeking the protection of the attorney-client privilege, the party invoking the privilege bears the burden of establishing its applicability. *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).

Panken and Plaintiff both agree that New York law on privilege should govern the instant motion. (*See* Panken's Mem. at 4; Pl.'s Opp. at 5.) Under New York law, "the proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (quoting *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 738 N.Y.S.2d 179 (Sup. Ct. 2002)). The attorney-client privilege "is personal to the client, and thus may not be waived by the attorney after the client's death." *Morales v. Portuondo*, 154 F. Supp. 2d 706, 730 (S.D.N.Y. 2001).

4

Panken broadly contends that the documents and information sought by the Subpoena are subject to attorney-client privilege because the Trust has not been disclosed to any third-party. (Panken's Mem. at 3.)  Panken provides an affidavit in which he affirmed he was retained by Ettore Annunziata to prepare a self-settled revocable trust on his behalf, he provided the Trust agreement solely to Ettore Annunziata and had not shared its contents with any other person, and that, to the best of his knowledge, his client also did not share the contents of the Trust with anyone.  (*See* Panken's Mem. at 4; Panken's Aff. at 2.)   Panken also argues that a trust document itself is generally subject to attorney-client privilege. (Panken's Mem. at 3.)  Plaintiff disagrees and argues that the Trust document was not protected under attorney-client privilege because it was not created with the intent to remain confidential by Ettore Annunziata.  (Pl.'s Opp. at 5.)  Further, Plaintiff claims that any privilege over the documents related to the Trust was waived because the Trust "has to have been shared with third-parties as Ettore Annunziata has passed away and property remains in the name of the Trust." (*Id.* at 6).

The Court finds that Panken has not sufficiently met his burden of showing the applicability of the attorney-client privilege to any of the information or documents requested by the Subpoena.  "The attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client."  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013).  In order for the privilege to apply, Panken bears the burden to establish that the Subpoena seeks privileged communications between Panken and Ettore Annunziata and that such communications were "primarily or predominantly of a legal character" and were "made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377–78 (1991) (internal quotation marks omitted).  Indeed, Panken "carries the burden to prove *every element* of the

5

privilege." *Egiazaryan*, 290 F.R.D. at 428. Rather than establishing every element, Panken merely broadly asserted privilege over any and all documents requested by the Subpoena. Panken has not once established that the Trust agreement and the Trust Documents contain privileged communications. Panken has not established that any of the materials at issue contain communications between Panken and his client that were primarily or predominantly of a legal character. Panken merely represents he "was retained by Ettore Annunziata to prepare a self-settled revocable trust on this [sic] behalf," Panken's Aff. at 2, and that he "has not disclosed to [sic] the Trust Documents to anyone outside of his office, his attorney, and the decedent" and that he "has no reason to believe that the decedent disclosed the trust documents to anyone," Panken's Mem. at 4. Without more, the Court "is left to speculate" as to which documents sought could potentially contain or reflect legal advice or other privilege communications. *See Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 104 (S.D.N.Y. 2007) (finding party has not met burden where party provided one short statement that legal advice was provided, leaving the Court "to speculate as to when, where, how, to whom, and in what manner the purported legal advice was provided").

The thrust of Panken's broad assertion of privilege appears to be that the Trust agreement itself must be privileged and thus all documents associated with the Trust are privileged. But Panken fails to acknowledge that the attorney-client privilege is "of course limited to communications—not underlying facts." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)). Thus, any attorney-client privilege that exists may be asserted only over privileged communications between Panken and his client relating to the formation of the Trust but not as to any underlying facts relating to the Trust. The Trust agreement itself does not fall within the attorney-client privilege

6

because it is not a communication between Panken and his client. Rather, it is an instrument setting up the Trust and merely conveys non-privileged facts about the Trust. Similarly, information about the corpus of the Trust—that is, the assets held by a trust—are facts about the Trust and not privileged communications regarding the formation of the Trust. In contrast, there may be privileged materials sought by the Subpoena to the extent that communications between Panken and Ettore Annunziata regarding the preparation or the formation of the Trust fall within the scope of the documents requested. However, since Panken has not stated that any of the documents sought contain privileged communications, he has not sufficiently met his burden in asserting privilege over any of such documents.

The Court hereby directs Panken to produce the Trust agreement along with any documents relating to the Trust sought by the Subpoena that do not contain privileged communications between Panken and his client. Panken must disclose any information and produce any documents or portions of documents that do not contain or reflect privileged communications primarily or predominantly of a legal character. This includes, but is not limited to, any underlying facts relating to the existence of the Trust, the corpus of the Trust, documents relating to the transfer of property in and out of the Trust, and any continued administration of the Trust. The Court directs Panken to conduct a good faith review of the documents requested by the Subpoena and produce every document that does not contain privileged communications.

To the extent that upon review of the documents Panken wishes to assert the attorney-client privilege over certain documents that contain or reflect privileged communications, the Court directs Panken to submit the documents for *in camera* review. Specifically, Panken is directed to create a log of documents for the Court that identifies (i) each document over which Panken wishes to assert the privilege, (ii) the author of the document, (iii) the date of the document, (iv) the

recipients of the document, (v) the purpose for which this document was made and why such document should be considered legal advice or communications, and (v) specific and detailed information as to why the particular document is subject to privilege. *See ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 58 (W.D.N.Y. 1996) (setting forth guidance for details needed in an *in camera* privilege submission). If Panken wishes to seek *in camera* review of any documents, Panken must submit the log along with the documents themselves to the Court for review by January 14, 2022.

Because the Court finds that Panken has not satisfied his burden in establishing that the attorney-client privilege applies, the Court does not need to address the waiver of privilege and the crime-fraud exception arguments set forth by Plaintiff.

## CONCLUSION

For the foregoing reasons, Panken's motion to quash is DENIED without prejudice and Plaintiff's cross-motion to compel is GRANTED. Panken is to comply with the Subpoena with regards to any information or documents that do not contain privileged communications between Panken and his client. If Panken wishes to assert attorney-client privilege over certain documents, Panken may do so by submitting such documents to the Court along with a log of such documents by January 14, 2022 for *in camera* review.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 8 & 13.

Dated:   December 15, 2021                                  SO ORDERED:
         White Plains, New York

                                                            _____
                                                            NELSON S. ROMÁN
                                                            United States District Judge